IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHANNON BARNHART, on behalf of
herself and ALL OTHERS SIMILARLY
SITUATED,

        Plaintiff,

    v.

FASTAX INCORPORATED d/b/a
JACKSON HEWITT TAX SERVICE
#0975,

        Defendant.
_____

Civ. No. 6:14-cv-00482-MC

OPINION AND ORDER

MCSHANE, Judge:

Between September 6 and December 8, 2012, plaintiff Shannon Barnhart, along with approximately 13 other individuals, attended PFS Tax School.[1] PFS Tax School, which is registered with the Oregon Department of Education, is designed to prepare students for the Oregon tax preparer examination and meet related licensing educational requirements. Plaintiff, like many of her classmates, signed a Pre-Employment Agreement ("K1") with defendant in order to receive a $499 tuition waiver. In KI, plaintiff agreed to: complete PFS Tax School; take and pass the Oregon tax preparer examination; obtain her tax preparer license; timely enter into an employment situation with defendant; and agree to the terms of the Employment Agreement

_____

[1] PFS Tax School is also referred to as the "Jackson Hewitt Income Tax Course" and the "Jackson Hewitt Tax Service Basic Income Tax Course." *See* Decl. of David G. Hosenpud 1, ECF No. 47-5 (referring to the course as the "Jackson Hewitt Income Tax Course"); Decl. of David G. Hosenpud 1, ECF No. 47-6 (referring to the course as the "Jackson Hewitt Tax Service Basic Income Tax Course").

("K2"). Plaintiff, upon completing PFS Tax School and receiving notice[2] that she had passed the Oregon Tax preparer examination, signed K2 on December 17, 2012. In K2, plaintiff agreed to: attend mandatory trainings and adhere to a non-competition clause. Between December 17 and 27, 2012, plaintiff spent approximately 30 hours working on ProFiler Efficiency Problems (PEP),[3] which she believed were part of her mandatory training. On January 19, 2013, plaintiff missed her mandatory Policy and Procedure Training (P&P) and was considered to have abandoned her employment. Defendant subsequently sought to recover the waived tuition fee for breach of K1.

This Court is asked to consider: (1) whether plaintiff is entitled to compensation for time spent attending PFS Tax School; and (2) whether plaintiff is entitled to compensation for time spent working on PEP. Because K1 did not confer plaintiff employment status, this Court finds that plaintiff was not an "employee" during her attendance at PFS Tax School under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, or ORS § 653.025. Because plaintiff raised a genuine issue of material fact as to whether she undertook her work on PEP with a compensation agreement, this Court is unable to determine whether plaintiff was an "employee" under FLSA or ORS § 653.025. Thus, defendant's motion for summary judgment, ECF No. 45, is GRANTED IN PART and DENIED IN PART.

## STANDARD OF REVIEW

This Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v.*

---

[2] Plaintiff received a letter dated December 12, 2012, notifying her that she passed the Oregon tax preparer examination. *See* Decl. of Charles Clinton Hunter 7, ECF No. 49-13. Plaintiff did not, however, receive her tax preparer license until January 17, 2013. *See* Decl. of David G. Hosenpud 1–2, ECF No. 47-22.
[3] PEP are practice tax returns created by defendant. *See* Decl. of David G. Hosenpud 7, ECF No. 47-1.

2 – OPINION AND ORDER

*Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* This Court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

## DISCUSSION

Plaintiff contends that she is entitled to compensation for her attendance at PFS Tax School and her time spent working on PEP. Pl.'s Resp. Summ. J. 29–40, ECF No. 48. In response, defendant argues that plaintiff was not an "employee" during her time at PFS Tax School and that she voluntarily completed PEP. *See* Def.'s Mot. Summ. J. 17–25, ECF No. 45; Def.'s Reply Mot. Summ. J. 8–15, 17–20, ECF No. 51. Because the parties do not dispute that analysis under FLSA and ORS § 653.025 is substantially similar, this Court proceeds using the FLSA framework.[4]

FLSA defines "employ" as including "to suffer or permit to work," 29 U.S.C. § 203(g); *see also* ORS § 653.010, and "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e). These broad definitions are intended to "insure that every person whose employment contemplated compensation should not be compelled to sell his services for less

---

[4] *See Nance v. May Trucking Co.*, No. 3:12-cv-01655-HZ, 2014 WL 199136, at *3–5 (D. Or. Jan. 15, 2014) (applying the FLSA framework to plaintiff's wage claims under ORS § 653.025); *Sanchez-Calderon v. Moorehouse Farms*, 995 F. Supp. 1098, 1103 n.5 (D. Or. 1997) (same); *see also Dinicola v. Oregon, Dep't of Revenue*, 246 Or. App. 526, 544 (2011) (noting that the Oregon "legislature adopted the FLSA's definition of 'employ' for the purpose of the state minimum wage law").

than the prescribed minimum wage." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). These definitions are not, however, intended to capture individuals "who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Id.* To determine whether an individual is an "employee" under FLSA and ORS § 653.025, this Court looks to the relevant case law.

In *Walling*, the Supreme Court considered whether plaintiffs who participated in a free practical training course[5] for prospective yard brakemen qualified as "employees" under FLSA. 330 U.S. at 149–50. The Court, which determined that the trainees were not "employees" under FLSA, emphasized four factors. *Id.* at 152. Those factors included:

> 1. Whether the trainees' activities displaced a regular employee or employees;
>
> 2. Whether the trainees' activities expedited or impeded the employer's business;
>
> 3. Whether the trainees undertook their activities with an express or implied compensation agreement; and
>
> 4. Whether the employer received an immediate advantage.[6]

*See id.* at 149–53; *see also* U.S. Dep't of Labor, Wage & Hour Div., Op. Letter No. FLSA2004-16, 2004 WL 3177877, at *1–2 (Oct. 19, 2004) (identifying six relevant criteria in determining whether a trainee is an "employee" under FLSA).

The Supreme Court revisited *Walling* in *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985). In *Alamo*, the Court considered whether volunteers who received food, clothing, shelter, and other benefits in exchange for operating a number of commercial

---

[5] Trainees who participated in this approximately seven-to-eight day training course observed their supervisors and performed "actual work under close scrutiny." 330 U.S. at 149.
[6] Analysis under the fourth *Walling* factor often includes whether training is for the benefit of an individual trainee. *See Reich v. Parker Fire Prot. Dist.*, 992 F. 1023, 1028–29 (10th Cir. 1993).

businesses owned by a non-profit religious organization qualified as "employees" under FLSA. 471 U.S. at 292. The Court emphasized that the "test of employment under [FLSA] is one of 'economic reality,'" and relied upon the third *Walling* factor to uphold the district court's finding "that the [volunteers] must have expected to receive in-kind benefits-and expected them in exchange for their services." *Id*. at 301 (citations omitted).

In *Williams v. Strickland*, the Ninth Circuit considered *Walling* and *Alamo* to determine whether an individual who participated in a six-month rehabilitation program at the Salvation Army qualified as an "employee" under FLSA. 87 F.3d 1064, 1067–68 (9th Cir. 1996). The Court relied upon the third *Walling* factor to conclude that plaintiff did not qualify as such an "employee." *Id*. The Court emphasized that plaintiff was required to offset costs incurred for "room, board, and clothing" by seeking "general assistance and food stamps," and that he engaged in work therapy for rehabilitation, not in exchange for in-kind benefits. *Id*.

This Court, having considered the cases discussed above, proceeds using the *Walling* framework. *See Nance*, 2014 WL 199136, at *5 (considering the *Walling* factors in assessing whether individuals who attended trucking orientations were "employees" under FLSA and ORS § 653.025). Pursuant to that framework, this Court separately assesses: (1) whether plaintiff is entitled to compensation for time spent attending PFS Tax School; and (2) whether plaintiff is entitled to compensation for time spent working on PEP.

**I. PFS Tax School**

Plaintiff contends that she is entitled to compensation for her attendance at PFS Tax School because K1 conferred her employment status on August 30, 2012. Pl.'s Resp. Summ. J. 29–39, ECF No. 48. Defendant disputes this interpretation of K1 and argues that K1 was merely

a condition precedent to receiving a tuition waiver. Def.'s Reply Summ. J. 10–15, ECF No. 51. This Court looks to the *Walling* factors.

The first and second *Walling* factors have little bearing on whether plaintiff was an "employee" during her attendance at PFS Tax School. Defendant conducts the majority of its business during the tax season, which defendant identifies as generally beginning in January and ending in April.[7] Plaintiff, who attended PFS Tax School between September 6 and December 8, 2012, did not displace any employee during the tax season beginning January 2013 ("2013 Tax Season"). Nor did plaintiff expedite defendant's business. If anything, PFS Tax School, which is normally operated by defendant's employees, impeded defendant from conducting other business related activities that could be performed outside of the tax season. *See* Alternative Decl. of Charles Clinton Hunter 5, ECF No. 28-2 ("Q. So the people that are the teachers are employed by Fastax? A. Correct."); Decl. of David G. Hosenpud 1, ECF No. 47-2 (approving Christy Phillips and Cindy Brickley as course instructors for PFS Tax School).

The third *Walling* factor weighs heavily against plaintiff. As discussed above, plaintiff signed K1 on August 30, 2012, and K2 on December 17, 2012. Plaintiff contends that under contract law, K1 established a compensation agreement on August 30, 2012. This Court looks to principles of contract.

Interpretation of a contract is a question of law, and this Court's task is to ascertain the intention of the parties to the contract. *See James v. Clackamas Cnty.*, 353 Or. 431, 441 (2013) (citing *Anderson v. Jensen Racing, Inc.*, 324 Or. 570, 575–76 (1997)). This Court first considers "the text of the contractual provision at issue, in the context of the contract as a whole." *Id.*

---

[7] K2 defined the term "Tax Season" as "the period of time from date [K2 is] signed through . . . April 17, 2013, unless terminated sooner according to this agreement." Decl. of David G. Hosenpud 1, 3, ECF No. 47-20; *see also* Decl. of Christina Phillips 10, ECF No. 46-6 ("Tax season officially begins in early January.").

(citing *Yogman v. Parrott*, 325 Or. 358, 361 (1997) (en banc)). If the provision is clear, the analysis ends. *Yogman*, 325 Or. at 361. If the provision is ambiguous, then this Court next examines extrinsic evidence of the contracting parties' intent. *Id*. at 363. If ambiguity remains after such examination, this Court relies on "appropriate maxims of construction." *Id*. at 364.

K1 provides in relevant part:

> Once I have graduated the Jackson Hewitt Tax Service Basic Income Tax Course, and received my Tax Preparer's License, *I agree to timely enter into an employment situation with FASTAX Inc dba Jackson Hewitt Tax Service #0975 for the 2013 Tax Season* and abide by the terms of the *signed* [K2]. Completion of any JHTS course neither guarantees employment or hours.
>
> I have read and understand [K2] and agree to the terms of said agreement.
>
> I understand that if I do not honor this agreement, FASTAX Inc dba Jackson Hewitt Tax Service #0975 and its authorized representatives will pursue any and all legal actions necessary to: 1) Remove my licensure as a[] [licensed tax preparer] because I do not follow written agreements and am untrustworthy in accordance with ORS 673.700 and ORS 673.705, and 2) pursue legal venues to recover the $499.00 in tuition and any filing or attorney fees that may occur in that pursuit.

Decl. of David G. Hosenpud 1, ECF No. 47-6 (emphasis added). K2, which is referenced in K1 and discussed in section II, provides in relevant part:

> _____[8] (and hereafter referred to as "you," "your," and "employee") accepts employment with **FASTAX Inc. dba Jackson Hewitt Tax Service #0975** . . . on the following terms and conditions of employment:
>
> .    .    .
>
> **3. MANDATORY TRAINING:** There will be mandatory trainings throughout December and early January. You are required to attend . . . . It is your responsibility to make arrangements to attend all necessary trainings.

---

[8] On December 17, 2012, plaintiff filled in this blank with her name "Shannon Barnhart." *See id*. at 1–2, ECF No. 47-20.

. . .

**7.  COMPENSATION:** The following compensation pertains, if applicable, as agreed within this Agreement.

. . .

**7b. HOURLY ADJUSTMENTS:** The following adjustments are to be paid as additional hourly wage wen earned . . . .

**7bi. KNOWLEDGE/SKILL/ABILITY ADJUSTMENT**: Staff who successfully complete the annual "PEP Problems" prior to the due date (January 9, 2013) are eligible for a $1.50/hr maximum KSA Adjustment to be paid as additional hourly wage when earned. The PEP Problems must be fully completed and checked by Management. It can also be earned in three incremental consecutive levels (A, B, and C); 10 problems (A Level) for $.25/hr, 20 problems (B level) for $0.75/hr and, the whole 30 (C Level) for $1.50/hr. After completing the PEP problems, 6 credit hours are earned that apply to LTP/LTC continuing education (2 credits for each level of completed problems).

. . .

**12. COMPETING WORK DURING/AFTER EMPLOYMENT AND SOLICITING**: You agree that *during your employment* with us, you will not, for yourself or for any other person or business, directly or indirectly, at any location, prepare any individual or business income tax returns or electronically file tax returns. You also agree that during the eighteen-month period *after you leave our employment*, you will not, within a 25 mile radius of the office(s) where you worked, directly/indirectly, prepare or electronically file tax returns nor solicit nor attempt to solicit any of the clients for whom you prepared/electronically filed returns during the law two (2) years of your employment with us.

*Id.* at 1–2, ECF No. 47-20 (emphasis added). Plaintiff contends that K1 incorporated K2's non-competition clause, *see supra* K2 § 12, thereby conferring plaintiff employment status on August 30, 2012, and entitling her to compensation for her attendance at PFS Tax School, *see* Pl.'s Resp. Summ. J. 30–32, ECF No. 48. This Court is not persuaded.

K1, by its terms a "*Pre*-Employment Agreement," required plaintiff "to timely enter into an employment situation with [defendant] for the 2013 Tax Season" *after* graduating from PFS Tax School and *after* obtaining her tax preparer's license, and to "abide by the terms of the *signed* [K2]." Decl. of David G. Hosenpud 1, ECF No. 47-6 (emphasis added). As a result, K1, which did not "guarantee[] *employment* or hours," cannot be reasonably interpreted to have created an express compensation agreement that conferred plaintiff employment status during her attendance at PFS Tax School. *Id.* (emphasis added).[9] To the extent that K1's sixth paragraph—"[I] agree to the terms of [K2]"—can be interpreted to incorporate K2's non-competition clause absent a signature, that clause did not apply until *after* plaintiff became employed. *See id.* at 2, ECF No. 47-20 ("You agree *during* your employment . . . . You also agree that during the eighteen-month period *after you leave* our employment . . . ." (emphasis added)).[10] Nor did plaintiff attend PFS Tax School with an implied compensation agreement. Instead, as conceded during deposition, she did not "have any expectation of being paid to go through the tax preparation course." *See id.* at 2, 19, ECF No. 47-8.

The fourth *Walling* factor also weighs heavily against plaintiff. Plaintiff's attendance at PFS Tax School served primarily *her* interests as described under the case law.[11] Plaintiff received basic income tax law education that met state licensing requirements. *See* Decl. of

---

[9] Plaintiff attended her final class at PFS Tax School on December 8, 2012. *See id.* at 1, ECF No. 47-11.

[10] If ambiguity had arisen, this Court notes that extrinsic evidence does not support plaintiff's interpretation of K1. *See, e.g., id.* at 1, ECF No. 47-9 (Plaintiff reported in an "Application For Employment" dated August 30, 2012, that she "would [] be available for work" beginning January 1, 2013.).

[11] *See Walling*, 330 U.S. at 152 ("The definitions of 'employ' and 'employee' . . . . cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction."); *see also Reich*, 992 F.2d at 1028 (10th Cir. 1993) (concluding that trainees who attended a fire academy benefitted more than the defendant); *Donovan v. Trans World Airlines, Inc.*, 726 F.2d 415, 416–17 (8th Cir. 1984) (concluding that an airline did not receive any immediate benefit from providing trainees with approximately 160 hours of instruction during a four-week period); *Donovan v. American Airlines, Inc.*, 686 F.2d 267, 272 (5th Cir. 1982) (concluding that trainees who received between 160 and 200 hours of instructional orientation benefited more than an airline).

David Hosenpud 1, ECF No. 47-2 (approving defendant's proposed *Basic 80-Hour Income Tax Course* "for September 1, 2012 through August 31, 2013"). Plaintiff, did not, however, prepare or assist another in preparing a *single* tax return. *See id*. at 4, ECF No. 47-8 ("Q. . . . You never prepared a tax return for a client . . . did you? A. Correct."); *see also supra* n.2 (noting that plaintiff did not receive her tax preparer license until January 17, 2013). As a result, plaintiff's attendance at PFS Tax School cannot reasonably be interpreted to convey an immediate advantage to defendant. *See Walling*, 330 U.S. at 153 (noting that trainees could not be considered "employees" merely because they completed defendant's practical training course and constituted "a labor pool from which the [defendant] could later draw its employees").

This Court, having considered the *Walling* factors discussed above, finds that these factors do not confer plaintiff employment status during her attendance at PFS Tax School under FLSA or ORS § 653.025. Defendant is awarded summary judgment on this theory.

## II. PEP

Plaintiff also contends that she is entitled to compensation for time spent working on PEP because PEP completion was mandated by K2 and related statements by Christina Phillips. *See* Pl.'s Resp. Summ. J. 39–40, ECF No. 48. Defendant disputes this interpretation of K2 and offers evidence to rebut alleged statements made by Phillips. *See* Def.'s Reply Summ. J. 17–20, ECF No. 51. This Court again looks to the *Walling* factors.

The first and second *Walling* factors have little bearing on whether plaintiff was an "employee" during the time she worked on PEP. As discussed above in section I, defendant's tax season generally extends from January until April. Plaintiff, who worked on PEP between December 17 and 27, 2012, did not displace any employee during the 2013 Tax Season.

The third *Walling* factor remains unresolved. K2, by its terms, conferred employment, but did not expressly mandate the completion of PEP. *See* Decl. of David G. Hosenpud 1, 3, ECF No. 47-20 ("Shannon Barnhart . . . accepts employment . . . . You are hired to provide outstanding customer service and tax preparation. . . . **Congratulations** on joining the Jackson Hewitt Tax Service Team. . . . The store(s) where you work operates under a franchise agreement . . . ."); Decl. of David G. Hosenpud 5, ECF No. 47-8 ("Q. Is there any language in that paragraph that says you must do PEP Problems? A. No."). Instead, K2 clearly outlined a compensation system that recognized differing levels of PEP completion. *See id.* at 2, ECF No. 47-20 ("It can also be earned in three incremental consecutive levels."); *see also infra* § II n.12 (identifying two of plaintiff's classmates who completed less than 30 PEP and were employed as tax preparers during the 2013 Tax Season). Plaintiff nonetheless argues that defendant mandated completion of *all* PEP training as a condition of employment, relying primarily on her own assertion that Christina Phillips instructed all students who attended PFS Tax School in 2012 that PEP were mandatory if they sought employment with defendant.[12] Plaintiff's assertion, in tandem with limited discovery[13] and seemingly universal completion of at least some PEP by her classmates who obtained employment with defendant during the 2013 Tax Season, is sufficient to create a genuine issue of material fact. *See supra* § II n.12 (identifying five of plaintiff's

[12] *See* Decl. of David G. Hosenpud 4, ECF No. 47-8 ("[T]he PEP problems were required."); Alternative Decl. of Charles Clinton Hunter 5, 11, ECF No. 28-12 (Q. And she said you must do PEP problems? A. Absolutely. . . . We had to complete *all* of [the PEP problems]." (emphasis added)); *but see* Decl. of David G. Hosenpud 1–3, ECF No. 47-12 (Leon Brock, who attended PFS Tax School in 2012 and worked during the 2013 Tax Season, "voluntarily completed [25] PEP."); Decl. of David G. Hosenpud 1–3, ECF No. 47-13 (April DeSantis, who attended PFS Tax School in 2012 and worked during the 2013 Tax Season, "voluntarily" completed 20 PEP.); Decl. of David G. Hosenpud 1–3, ECF No. 47-14 (Johan Doorenbal, who attended PFS Tax School in 2012 and worked during the 2013 Tax Season, completed 30 "optional" PEP.); Decl. of David G. Hosenpud 1–3, ECF No. 47-15 (Robert Fisher, who attended PFS Tax School in 2012 and worked during the 2013 Tax Season, "voluntarily" completed 30 PEP.); Decl. of David G. Hosenpud 1–3, ECF No. 47-18 (Randall Snauer, who attended PFS Tax School in 2012 and worked during the 2013 Tax Season, "voluntarily" completed 30 PEP.).

[13] This Court requested dispositive motions prior to the close of discovery in order to narrow plaintiff's proposed classes under FLSA and FRCP 23. *See* Minute Order, June 24, 2015, ECF No. 44.

classmates who completed at least some PEP and were employed as tax preparers during the 2013 Tax Season). As a result, this Court is unable to determine whether plaintiff undertook her work on PEP with a compensation agreement.

The fourth *Walling* factor weighs against plaintiff. Plaintiff's completion of PEP served primarily *her* interests as described under the case law. *See supra* § I n.11. Plaintiff's completion of 11 PEP qualified her for an increased hourly base rate ($0.25) for each hour of work performed for defendant. *See* Decl. of David G. Hosenpud 2, ECF No. 47-20 ("Staff who successfully complete the annual 'PEP Problems' . . . are eligible for a $1.50/hr maximum KSA Adjustment . . . ."). Plaintiff's completion of PEP also enabled her to practice tax preparation and familiarize herself with defendant's proprietary software. *See* Decl. of David G. Hosenpud 7, ECF No. 47-1.[14] Such increased familiarization with defendant's proprietary software, however, does not alter the fact that she did not prepare or assist another in preparing a *single* tax return. As a result, plaintiff's completion of 11 PEP cannot reasonably be interpreted to convey an immediate advantage to defendant under the case law. *See Walling*, 330 U.S. at 153; *see also Nance*, 2014 WL 199136, at *5 (concluding that defendant did not receive any immediate

---

[14] Defendant also suggests that plaintiff's completion of 11 PEP provided her with two continuing education credits for license renewal. *See* Def.'s Mot. Summ. J. 10–11, ECF No. 45 ("Although newly licensed tax preparers are not required to certify that they have taken the requisite credits in the year their licenses issue, the 30 CE credits can be accumulated by any licensed tax preparer and applied in their required renewal year."). Defendant's suggestion is inaccurate. Plaintiff's license automatically expired on September 30, 2013. *See* Supplemental Decl. of David G. Hosenpud 3, ECF No. 52-1; OAR 800-020-0030(2). Plaintiff was not required to report any continuing education requirements for her first license renewal, which extended her license expiration from September 30, 2013, until September 30, 2014. *See* Decl. of Charles Clinton Hunter 7, ECF No. 49-13; *see also* OAR 800-015-0010(1). If plaintiff had decided to renew her license until September 30, 2015, she would have needed to complete a minimum of 30 continuing education credits "since" her initial renewal, which occurred sometime after September 30, 2014. *See* OAR 800-015-0010(1) ("Except for renewal of an initial license, a . . . Licensed Tax Preparer . . . shall attest on the renewal to have completed at least 30 hours . . . since the last renewal date."); *see also* Oregon Board of Tax Practitioners, *General Information Booklet for Tax Consultant & Tax Preparer Applicants* 10 (rev. Sept. 2014), *available at* http://www.oregon.gov/OBTP/docs/pdfs/gen_info.pdf ("To renew their licenses each year, licensees must attest to having completed a minimum of 30 hours of . . . continuing education during the 13 months prior to each license year."). As a result, plaintiff completion of PEP did not provide her with applicable continuing education credits.

advantage where plaintiffs "underwent qualification tests (e.g., drug, road, physical) and learned to safely operate a truck").

This Court, having considered the *Walling* factors discussed above, finds that plaintiff raised a genuine issue of material fact as to whether she undertook PEP with a compensation agreement. Defendant is denied summary judgment on this theory.

## CONCLUSION

For these reasons, defendant's motion for summary judgment, ECF No. 45, is GRANTED IN PART and DENIED IN PART. Plaintiff's motion to certify the class, ECF No. 24, is DENIED IN PART as moot. It is hereby ordered:

> **1.** Defendant is awarded summary judgment as to plaintiff's first, second, third, and fourth claims for relief to the extent those claims are based on plaintiff's attendance at PFS Tax School; and

> **2.** Plaintiff's fifth, sixth, and seventh claims for relief are unaffected by this decision.

IT IS SO ORDERED.

DATED this 26th day of August, 2015.

_____
**Michael J. McShane**
**United States District Judge**